We've got two cases at the beginning this morning. They are largely the same case. And of course, the same lawyers are arguing, as I can see here from the date sheet. We've set it up formally as each case goes separately for 15 minutes aside and does it twice. That strikes me as likely more than we're going to need and perhaps an awkward way to do it. With the permission of counsel, what I would like to suggest is that we argue both cases at the same time, since it's the same counsel. And if it turns out that 15 minutes per side with two cases together is not enough time, we'll expand the time slightly. Is that all right with counsel? Will that work? Your Honor, this is Richard Sheff for the appellants. And yes, it is. That makes perfect sense to me. Yes, this is Matt Wessler for the appellants. And of course, that's totally fine on our side as well. Thank you. So why don't we call both cases, Brice v. Plain Green and Brice v. Sequoia Capital Operations. And we'll argue them at the same time. And you can differentiate to the degree that you think the facts on the two cases need to be differentiated. And we'll start out with the notion of 15 minutes aside, but we will be flexible. And if more time is needed, we'll certainly give more time. And the appellants are Plain Green and defendant, Sequoia Capital. So I guess that means, Mr. Sheff, you go first. You can see the clock. Yes, Your Honor. I'm sorry, Your Honor. I didn't mean to cut you off. Can you see the clock on your screen? I can, Your Honor. Thank you. Okay, it counts down. And so the floor is yours. Thank you, Your Honor. Good morning. My name is Richard Sheff. I represent the appellants in this case. And with the court's permission, I'd like to reserve three minutes for rebuttal. Okay. The district court's order denying the motion to compel arbitration should be reversed for two reasons, both of which require the parties to be compelled to go to arbitration. First, the district court failed to properly analyze and apply a clear and conspicuous delegation provision that none of the parties dispute exists in all of the loan agreements, and which requires an arbitrator to rule on issues such as arbitrability. Second, even if the court were to ignore that clear and conspicuous delegation provision, which we contend it should not, the plaintiff's only basis for avoiding their promise to arbitrate gateway issues such as arbitrability, as well as the merits of the claims, is a contention of prospective waiver. And that is an argument that this court has already rejected en banc in the Richards case. As the plaintiffs… Question. In what way or ways, if any, are the agreements in these cases different from the agreements that were held invalid in the Second Circuit, the Third Circuit, and the Fourth Circuit? In the Second Circuit, in the Gingras case, they are the same agreements. In the Third Circuit, in the Williams case, I believe one of them is the same agreement. In the Fourth Circuit, there are a variety of cases, Your Honor. In the Gibbs case, they're the same agreements. In the Dillon case, there's the agreement for Great Plains. That is one of the agreements in our case. And in the Hayes case, that is an agreement that is not at issue in this case. I'm unaware of any circuit that's upheld these agreements. Am I missing the case? You're not, Your Honor. You're not. But we believe that the decisions that have preceded what this court needs to do are in error for at least two reasons, as I've stated. One is that the delegation clause has to be honored. And it has to be reviewed separately for enforceability from the arbitration agreement itself. The delegation clauses are clear, and they require that the issue of arbitrability be sent to the arbitrator. With respect to prospective waiver, and the cases that Your Honor has referred me to and which I talked about are all prospective waiver cases. What I would say, Your Honor, is that they are inconsistent with the Richards case, which is an en banc case of this circuit. And so to the extent this court were to evaluate prospective waiver or to say that the district court appropriately evaluated the merits of the prospective waiver, which we don't believe it did, we believe that's an issue that should have been sent to the arbitrator, and the arbitrator needed to make the decision on whether there was a prospective waiver, that under Richards there is no prospective waiver. Help me out if you can. What is it about the Richards case that, in your view, compels us to view you in your favor in these cases? Well, Your Honor, what the apolis, what the plaintiffs have argued below is that tribal law, the choice of law provision in the arbitration agreement, prohibits or will not permit them to assert their RICO claim for treble damages. That's the identical issue that was addressed in the Richards case. In the Richards case, where there was an agreement to arbitrate, the plaintiffs, it was an investment case, the plaintiffs argued that the choice of law, which was British law, did not permit a RICO claim or certain securities law claims, and of course the RICO claim would provide for treble damages. And what the Richards case said was, the issue is not whether the foreign law that is to be applied as the choice of law allows you to assert a specific claim, but essentially the issue is are you barred from recovery? Do you have a remedy? And here, and so with respect to RICO, the Richards case has already determined and already held that it's not a sufficient basis to find prospective waiver, and there should be no difference with respect to tribal law here, even though there's been no determination by anyone that ultimately on the merits, tribal law will apply. So that's why Richards controls, and that's why there is no prospective waiver. Counsel, I have a question for you. Let's assume that prospective waiver does apply here for purposes of my question. Wouldn't you agree that there are some contractual arguments that apply contract-wide as opposed to apply provision by provision? And if you would agree with that, why isn't a prospective waiver a contract-wide issue? Because the courts that have looked at this issue previously have said that the delegation clause needs to be reviewed separately, and enforceability of that delegation clause needs to be reviewed separately. The only basis for arguing that the delegation clause was not enforceable was an argument that the entire arbitration agreement was not enforceable because of prospective waiver. But what you need to do is you need to apply prospective waiver to the delegation clause. The delegation clause itself cannot be unenforceable because of prospective waiver. First of all, this court, the Ninth Circuit in the Cate Flattery case, has said that foreign law can be applied with respect to the issue of arbitrability. That's number one. Secondly, prospective waiver is an issue of whether or not somebody can pursue a claim, whether they can get recovery, as the court in Richards has said. The delegation clause doesn't govern that issue at all. The delegation clause simply governs the issue of who decides what is arbitrable or not, and that has nothing to do with prospective waiver. And so prospective waiver, I would argue, and we contend, cannot render the delegation clause unenforceable. Counsel, if this went to arbitration, can the arbitrator sit there and decide? Because the arbitrator, under your view, under the delegation clause, is deciding arbitrability, right? And so can the arbitrator sit there and say this contract is unenforceable because of prospective waiver, because of the federal law of prospective waiver, or does the fact that federal law doesn't apply prevent the arbitrator from being able to do that, in your view? The arbitrator can make that very decision, Your Honor, and decide that prospective waiver applies. So the arbitrator, at the delegation stage, you think can apply federal law? I believe that the arbitrator can, yes. So if the arbitrator can, why can't we? I'm sorry, Your Honor, I didn't hear your question. If the arbitrator can apply federal law, why can't we? At least I'm understanding your argument is to say we cannot. Well, you are applying federal law. You're applying federal law because you're upholding the enforceability of the delegation clause. Let me ask the question slightly differently then. I understood your answer to Judge Van Dyke to be that the arbitrator could apply federal law that you say we cannot. Did I understand your answer correctly? What I'm saying, Your Honor, and I'm sorry if I'm not being clear, is that under the law, because you have a clear delegation clause, it must go to the arbitrator for decision. All of the issues that Judge Orrick decided should have been decided by the arbitrator. And so the arbitrator can appoint, can apply federal law, and the arbitrator can decide that prospective waiver applies. The arbitrator can decide that the contracts are unconscionable. All of those issues can be litigated before the arbitrator. So you're saying— And Henry Schein— Pardon me for interrupting. I'm sorry, sir. So you're saying that the arbitrator can decide that the contract is unenforceable, but we can't. Is that right? Because of the delegation—well, you can, under Henry Schein, decide whether or not there's a valid arbitration agreement. But if Henry Schein is to be interpreted to say or to permit prospective waiver arguments to be raised to determine validity at this stage of the proceeding, then I would argue that Henry Schein has no meaning. What Henry Schein means and what the cases which follow Henry Schein—and there are a series of cases which follow Henry Schein, the McGee case out of the Sixth Circuit, the DeAngelis case, the Diaz case, the Silos case, and the Silverman case, all say that really the review at this stage is simply, do you have a facially valid arbitration agreement? Does it exist? Is there actually a document? Is it signed? And if so, it then goes, and you have a clear and conspicuous delegation clause, then arbitrability goes down to the arbitrator. The arbitrator makes those decisions and either decides that the case will proceed in arbitration or that the plaintiffs are right and the case will then be sent back to the district court. That is procedurally the way it's supposed to work under Henry Schein and the cases which follow Henry Schein and interpret that case. So, counsel, can I ask you a question? But going back to what you said earlier about the cases that say, including this court, that say you can apply, you can have basically a choice of law provision that says that foreign law will govern. I think that's right. I think you could probably have a provision that says German law will govern. We're going to arbitrate and German law will govern, and that would mean, I guess, that United States law didn't govern, except for, as I think Judge Fletcher was kind of getting at, that it would definitely govern us deciding whether or not it's arbitrable or not, or should go to an arbitrator. But is there a difference between foreign law in the sense of German law or something like that, as opposed to, say, tribal law? Because tribes are foreign in a sense, but they're a lot like a state in a sense also. And I don't think you could say Delaware law will govern but not United States law, right? You couldn't say that. That would be a classic prospective waiver problem to say that. So I think you could say Delaware law – you could say German law governs and not United States law, but I don't think you'd say Delaware law governs. So I don't think you can say – it depends on whether tribes are more like Delaware or more like German. Because I think a choice – in other words, you can choose foreign, real foreign law, but I don't know that you can throw out United States law. At least that's not what – like Judge Fletcher was getting at, that's not what a whole bunch of other courts have said. No, and, Your Honor, I appreciate the distinction that you're trying to make, and I'm – in honesty, I'm not a Native American law expert. However, I've spent a lot of time in these cases, and what I would tell you is this. There are significant issues that underlie these types of cases and cases where there are choice of law provisions for tribal law which relate to tribal sovereignty and those issues of tribal sovereignty and how they mesh with U.S. law and U.S. policy. So I would argue, Judge Van Dyke, that in many respects, if you had a Native American lawyer standing here arguing these issues, they would say to you, no, we really are like a foreign country. We're a tribe. We're a federally recognized tribe, and we are a sovereign. And only Congress can override what we do, and Congress has not overridden what we have done in this area. And so we are free to do what we want until Congress tells us otherwise. I think every Native American lawyer would tell you that. Well, of course they would. But you just made the point that they can be overridden by Congress. By Congress. Germany can't. Germany can't. That's right. A state can. So in that sense, they're more like a state. And in many respects, and I'll give you an example which is slightly off point, but it sort of makes your point, I think, to some degree. The Consumer Finance Protection Board has a specific provision, or bureau, which says they treat tribes the same way they treat states. But that's an act of Congress which said that. So here, what I would say is that tribal law is really no different than any other foreign law, and the arbitrator needs to treat it the same way. And that's what they need to do. And the arbitrator can decide, ultimately, and I see them over my time. So the arbitrator can decide that the tribal choice of law provision is not enforceable at all. The arbitrator can decide that certain aspects of federal law apply. So the arbitrator has a lot more latitude and is not as pigeonholed because they act under the Federal Arbitration Act. Judge Fletcher, can I ask him a follow-up? I'm following you. I'll run as long as it needs to go. Because this is actually related to the other question I have, which is when I look at the agreement language, it's not actually super clear to me. The Fourth Circuit case, I think Judge Fletcher and you were discussing earlier, it was exactly these agreements. And the Fourth Circuit case, as I recall, this is the Gibbs case. The Gibbs case actually said that those agreements, these are agreements, do not explicitly preclude the application of federal law. But it went on to basically say they sort of implicitly precluded it. It's not as clear to me, I guess, when I read these. It says that they won't be governed by the laws of any state. It says that they may choose to voluntarily use. Later it says that you can bring any federal, state, or tribal law claims. So I guess it kind of goes to what you were just saying. Is it your view that if this goes to an arbitrator, if we were to say, if delegation clause, you can apply federal, state law, et cetera, and if this goes to an arbitrator, an arbitrator has all of that to look at in deciding whether these are enforceable contracts. And then you're saying an arbitrator could read this and say, I think federal law applies. I'm not saying for sure, but I think an arbitrator could read it that way. Is that your position, or what is your position on that? Yes, Your Honor, that is my precise position. And is it right that in one of your two cases, the Sequoyah case, the tribe or whoever, the defendants have actually said, we'd be fine with federal. They're not even going to fight that in front of the arbitrator. Is that right? Yes, Your Honor, that's correct. But the other has not? The other is going to fight and say federal law will not apply? We don't know. It's going to depend on what the arbitrage, well, assuming that the cases get sent to arbitration, it'll depend on what happens with the arbitrator. I mean, those are decisions that, as in any litigation. I'm not saying what the arbitrator will decide. I'm saying it sounds like Sequoyah in the one case is going to not contest it. So you would think, you know, both parties are going to be saying federal law applies here. But in the other one, they are going to contest it. That's my question. Is that right or not? I think they haven't taken a position, Your Honor. Okay. I'd like to follow up on Judge Van Dyke's question or analogy. The issue that he posed was, well, is tribal law more like the law of truly foreign countries such as Germany or more like the law of a state? This may be a slightly unfair question, given that you just told us you really don't know much Indian law. So I'll ask the question, but I suspect you don't know the answer. In the words of Noatak, the Supreme Court said that the tribes are not even a state with respect to the 11th Amendment. So in some sense, they're not even a state. They're less than a state. Do you have a response to that? It may be outside of your area of expertise. Your Honor, I apologize. I do not have a response to that. The only way I can respond, and I cannot respond to that specific case, so I apologize for not knowing that case. In the area of – and this may be a little off point, and if it is, I'm sorry, I'm sure you'll tell me. In the area of tribal economic development, which is what this case is all about in terms of the business that is being run by the tribal lending entity. It's all about tribal economic development. The federal policies are extremely strong and clear to support tribal economic development and tribes' ability to be self-sustaining and to be on their own. And the most recent case that I am aware that speaks to that issue of federal policy and its support of tribal economic development, which is what's happening here, is the Williams v. Big Picture case in the Fourth Circuit, which was decided in, I believe, June of 2019 and which is cited in our reply brief. It is a very – That case didn't seem particularly persuasive to the Fourth Circuit, correct? I mean, the Fourth Circuit ruled directly against it.  I can't contest that Gibbs didn't rule against this. It did. But Gibbs wasn't dealing with the Richards case, which is what we have here. And frankly, I think Gibbs took an overly narrow view of the Henry Schein case as did the Gingras case. You know, Henry Schein is just not limited by its own language in the way that Gingras and Gibbs say it is. And we believe we have Supreme Court precedent which controls that the delegation clause, which is enforceable, nobody's contended that it doesn't exist. Nobody's contended that it's not clear and conspicuous. The only basis they claim that delegation clause is unenforceable is prospective waiver. The issue of prospective waiver has nothing to do with what is at issue in the delegation clause. Henry Schein requires that these cases go to arbitration and for the arbitrator to decide arbitrability. And all of the interesting questions that Judge Van Dyck is asking about the interplay between federal law and tribal law and that Your Honor is asking, they're all for the arbitrator. Okay. Let's hear from the other side. We've taken you over, but given the way that we've consolidated, you've asked for three minutes in rebuttal. We'll give you three minutes in response. Thank you, Your Honor. Judge Wessler. Thank you, Your Honor. Matt Wessler for the appellees. I'd like to just pick up, I think, on a question that Judge Van Dyck asked about and Judge Fletcher, that you followed up on about this question of the status of tribes and tribal law. Because if there's one thing that we know from the unanimous weight of authority in the Second Circuit, the Third Circuit, the Fourth Circuit, in rejecting the validity of these contracts and declining to embrace any of the arguments that Mr. Sheffitt has made in support of enforcement here, it's that when it comes to truly international contracts, contracts that select the law of Germany or Britain, for instance, a case like Richard's, all the circuits have the exact same rule for contracts like that and for choice of law clauses that select truly foreign law. And if you read Richard's, what you see is that that case involved what this court called a truly international transaction. The parties in that case who were domestic citizens of the United States flew to England to enter into a contract with Lloyd's of London. And in that context, what this court said was when we're asked to decide whether a choice of law clause, together with a choice of forum clause, works to operate as a prospective waiver, we apply a different standard than the standard we would apply under Chapter 1 of the Act. So, counsel, I think you're probably right about that. So here's the question that it's different when you're a tribe than when you're German. But so here's the question. You know, a lot of these cases, not the ones that are actually talking about these contracts from the Fourth Circuit, but when I look at the other cases, it looks to me, I didn't have those contracts. I just have the way that they're written about in the cases. But it looks to me like they have stronger language. For instance, if I recall correctly, in the Fourth Circuit's 2016 Hayes case, I think it was. Yeah, it looks to me like in that case, the actual language tried to explicitly say federal law won't apply. Right. That was and I could see. Then it seems like that issue's kind of front and center. And it's also not clear whether there was a delegation clause and it just didn't seem to really address that. But it said federal law didn't apply. I don't quite see that here. It looks to me, I mean, it specifically doesn't say federal law doesn't apply. It says that the lender's not subject to the laws of any state of the United States. And then there's some kind of not particularly clear language about federal law won't apply unless it does apply. You know, I'm paraphrasing. But then later it says that the term dispute will mean any federal, state, or tribal law claims. And so why wouldn't the arbitrator here be able to certainly apply federal law in deciding whether this is enforceable? In other words, be able to say, I'm going to look and say that the federal prospective waiver doctrine applies here. And if this does prevent people from being able to bring their federal claims, then I'm going to rule that this is unenforceable. Your opponent doesn't seem to be saying that the arbitrator wouldn't be able to do that. So why shouldn't this, under the federal law governing delegation clauses, why shouldn't this go to the arbitrator on that? Sure. So I have two responses to that. If I could pause, though, and just, you asked a question, or not, you didn't ask this, but it was built in, which is what the other contracts looked like. And you're right. The 2016 case, Hayes, had an explicit statement disclaiming the application of federal law. Every contract since then, so the Second Circuit's contract in Gingras, the Third Circuit's contract in Williams, the three following Fourth Circuit cases, Dillon, and then the two Gibbs cases, all of those contracts took that clause out. They're all almost identical to the one that the Fourth Circuit looked at in Hayes, with one exception, which is they removed that language in an attempt, I think, to sort of suggest exactly what you're suggesting, which is maybe there's some ambiguity about whether federal law would apply or not. Can I ask you about that? I realize I want you to answer my other question, but this is actually really important, too. Because, you know, I'm used to contracts all the time say, this contract will be governed by Nevada law, you know. And they don't usually say, or maybe at least not in my experience, they don't necessarily always say, this contract will be governed by Nevada law, parentheses, oh, yeah, and we're not disclaiming that federal law also applies, right? They'll just say it's governed by Nevada law. And so when it just says that it's governed by Nevada law, that doesn't necessarily read as excluding. But that's what they did in the Gibbs case. They said, well, it doesn't expressly preclude. We're going to read it to implicitly preclude. And that seems kind of odd. You'd never do that with other contracts. So what do you think of that? I totally agree entirely with your premise that if a party were to select a state law, it wouldn't carry with it any implication about the ability to bring federal statutory claims. And any party that would attempt to argue that would probably be laughed out of court because, of course, federal law always applies. The difference here, the key difference, and the reason why the Fourth Circuit has been so consistent about this, is that these contracts, in their attempt to apply tribal law, tribal law displaces federal law. That's what it does. And so it does that because of tribes' sovereign immunity to avoid being sued for federal claims unless, as Mr. Sheff explained, Congress abrogates that sovereign immunity or, and you see this at the beginning of these contracts, ER-100 in this case, the record, the contract says this very explicitly. We do not agree or acquiesce to the application of any federal law unless the tribe passes a resolution acquiescing to that specific law. I'm sorry, that's in these contracts you're saying? Yes, it's right at the beginning, ER-100 and ER, the second one, ER-116, I think. The point, though, across the board, is that by selecting tribal law instead of Montana law or Nevada law or anything else, is that by this contract, the goal is to strip a consumer of their ability to pursue a federal statutory claim, and they don't need to say that explicitly because that's the effect of selecting tribal law. Couldn't an arbitrator, I mean, to go back to the, to bring us full circle to my original question, couldn't an arbitrator say, that's not the way I read this? Right. So the answer is no. And the reason the answer is no is because unlike a court, an arbitrator's power and authority derives entirely from the contract. They are not licensed or do not have the authority to extend beyond the confines of what the contract itself says, covers the arbitration. And the contract here says, the term dispute is to be given its broadest possible meaning and includes without limitation all federal, state, or tribal law claims. So why couldn't, if I was the arbitrator pretending to be a judge, why couldn't I be like, you know, so I got all the power I need from the contract to decide this federal question. Right. So let me point you, Your Honor, just, I know, and the print's really small, so I had to blow it up, but ER 107 in the plain, the plain green contract, they're all the same. So Great Plains has something similar. And here's what it says specifically about what the arbitrator can do. It says the arbitrator shall apply tribal law. That's a, that's a firm mandate in the contract. And it says if the tribal law, if the arbitrator does anything, I'm paraphrasing, it doesn't say this exactly, but I'm just going to paraphrase it. If the arbitrator does anything else, were to go beyond tribal law and do what Your Honor is suggesting, right, which is to say, look, I get it, but you brought a RICO claim, there are remedies, I'm going to allow it. The contract specifically says that the award will be overturned because it will be inconsistent with tribal law. So it's not. Counsel, I'm going to jump in there. Under the Supreme Court's more recent cases, talking about these delegation provisions, isn't that conflating the analysis? Isn't that something that the arbitrator needs to do? Because the way I'm reading those cases, it says that we, we have to enforce a delegation provision and have to have the arbitrator decide these complicated questions unless the delegation in and of itself is invalid. So what about the language that you're pointing to tells us that the delegation, separate from anything else, is invalid? So let me back up. I want to answer that question, but I want to back up because I disagree with the way that you characterize the Supreme Court's cases. And I think you're referring to Schein. I don't know if there's any other Supreme Court case since Rent-a-Senator that has looked at a delegation clause. I think those are the two cases. Let's be clear. Yes. Right. So let's be clear about Schein. Schein did not involve a specific challenge to a delegation clause. So you hear Mr. Sheff talk a lot about Schein, which, again, the same argument was rejected by the Fourth Circuit, the Third Circuit, and the Second Circuit. Schein was not a case in which a party challenged the enforceability of a delegation clause. The only question at issue in that case was whether a court could look past the delegation clause, presumably a valid delegation clause, and make a call about whether a particular claim was arbitrable or not. And the Supreme Court said no. If you have a valid delegation clause, the court's only job is to then send it to an arbitrator. Pair that with Rent-a-Senator. Because in Rent-a-Senator, I think this is really the key. And it's what, if you read Gibbs, what the Fourth Circuit set out in its explanation for why this delegation clause argument fails. In Rent-a-Senator, the court said no one challenged the validity of the delegation clause. And in the absence of a specific challenge to the delegation clause, everything goes to an arbitrator. But where a party specifically challenges the enforceability or validity of the delegation clause, then a federal court steps in and does the analysis itself. And here, that is exactly what's going on, is that in this case- So let's assume that. Let's assume that's true. I'll give you that for purposes of this question. That there was a specific challenge to the delegation provision, which triggers our obligation as a court to then look at that delegation provision and decide, is it valid or not? And so my question is, when the argument is- I mean, it seems that the argument that your clients are bringing is this whole contract is invalid because of prospective waiver, and therefore the delegation provision is also invalid for prospective waiver. What I'm not understanding fully is, why is this particular delegation provision invalid for prospective waiver? What about that provision? Is a prospective waiver separate from the bigger contract? I think there's two answers to that, Your Honor. The first is, number one, it deprives any party of applying federal law in an arbitration by specifying that all an arbitrator can do is act consistent with tribal law. Just to be clear, so at the delegation stage you're saying it does this, or you're saying that at the merit- At any stage, at any stage- That's not what your opponent thinks. They're not going to argue that to the arbitrator. Yes, and in all of these cases, just again, to be clear, in all of these cases, they have come in and said, we concede, we will allow the arbitrator to apply federal law. They have said that. They've said that in the briefs, they've said that in argument, but it doesn't matter. It doesn't matter what a party later does in an effort to enforce an arbitration agreement. What matters is the written contract itself. This court has to take the contract as it's written. It can't accept a party's later concession. So counsel, just to be clear, in this contract, there's language that says that all federal, state, or tribal law claims can be brought. And then there's another thing that says that it will be governed by tribal law. And your argument is tribal law is special. It displaces federal law. I'm not sure about that. But it seems to- But it's not like the other type of contract where it actually specifically tries to get rid of federal law. So it seems like you're- At the end of the day, it's a little bit hard. What I'm struggling with is if you go to the arbitrator and the arbitrator agrees with the arguments you're making to us, the arbitrator is going to kick this case out. It's going to find that it's not arbitrable. They're going to decide that it's not enforceable. Or they're going to decide it the other way, which your argument to us can't be- It can't go the other way. And so then they're going to allow it to be arbitrated, but then you will be able to bring the federal claim. So I don't see- I know you don't want it to go to arbitration, but it seems that you're either going to- And if they decide- If they agree with your argument now, they're going to- The arbitrator will decide that it's not enforceable. I mean, that is certainly one possible consequence if one of these cases were sent to arbitration. But by its terms, this contract and the arbitrator are constrained to apply only tribal law. Notwithstanding, Your Honor, that one clause that says this covers everything by selecting tribal law. And again, I don't- Other than to just point you to the second, third, and fourth circuit cases, I can't make this any clearer. That displaces all federal law. Your argument must be- Just to be clear, your argument must be that it says tribal law will apply in one spot. In another spot, it says all federal, state, or tribal law claims. I think what you must be saying is that those two piece languages work together to say all federal and state and tribal law claims will come in, bring them all in arbitration, and you'll only apply tribal law to all of those claims. Is that- That's what you're saying? Yes. Yes. And let me- If I could just back up for a second because I also- Judge Hunsaker, I want to get back to your question. There's another- And again, I see that my time has run down. We'll talk as long as we need to talk, so please go ahead. There's another feature, which we haven't talked about yet, which I think gets to a core problem on top of everything else, which is- And Judge Van Dyke, you were suggesting, oh, look, an arbitrator might agree with you and then we'd be back here. No, we wouldn't be back here. Because if you look at this contract, what it does is it sends the parties to an arbitration to be governed by tribal law, and then it forces whatever happens after that to then move to tribal jurisdiction, tribal court jurisdiction, not a federal court. Are you- I assume you're referring to the language that says, in the event you opt out of the agreement to arbitrate, any dispute shall nonetheless be governed under tribal law and must be brought within the court system of the Otay Missouri tribe? Is that the language? No. I mean, that is- That's part of it, but there's an additional language. Again, at ER 107, it specifically says that anything that happens in arbitration after that happens goes back to tribal court and is reviewed in tribal court and may be set aside by tribal court upon judicial review. And so one of the hallmarks of this prospective waiver analysis, and you see this sometimes, for instance, in Mitsubishi Motors and Vimar Seguros, the Supreme Court cases where the court said, let's wait to see what happens. We have some uncertainty about whether the contract would be interpreted to strip somebody of their statutory right. Let's see what happens. And if it turns out that it does, then the federal court can come back and review it on the back end. That is not possible here. And it doesn't matter, again, whatever the other side wants to come in and say, well, we'll agree to it now. Everything that happens is controlled by the contract that they drafted and that was designed to accomplish this one thing. Consistently with your question, I just want to make it clear, because I want to hear from your opposing counsel about this. But it is one question I've had in mind. Like I said before, if you go to the arbitrator and the arbitrator agrees with what you're saying now, the arbitrator will kick it out. And you're saying, well, that will go to tribal court then, and we don't like that. That's a whole separate question that I haven't gotten up to speed on here, but I don't know if that's unlawful or not. I mean, it might be lawful for people to have picked to litigate their claim in tribal court. And people do that all the time. They pick a forum. But you're saying that if, let's say the arbitrator does something grossly wrong. Like, let's say, it just goes to the arbitrator. The arbitrator says, yeah, I read this exactly the way that, Mr. Wessler, you're saying that it should be read. So you can't bring your federal claims. Very draconian. And there's this thing called prospective waiver, but I don't care. I don't like the Supreme Court. And so some real egregious decision. I assume that when an arbitrator makes an egregiously wrong decision, that there's still some sort of judicial review of that on the back end. Is that right or not? There is, and the scope of that review is specified in the contract. And what it says is that the only decision from an arbitrator that will be upheld is one that is consistent with tribal law. That's it. So anything else is ultra viris from this contract. If the arbitrator were to do anything else, it would violate the clear terms of this contract. Which is why every court that has looked at this has said the prospective waiver doctrine applies not just to the underlying arbitration contract, but also to the delegation clause. Because the delegation clause, all it is under Rent-A-Center, the only thing it is, this gets Judge Hunsaker to your question. It's just a separate antecedent arbitration contract. That's all it is. The same rules that would apply to the underlying contract also apply to a court's assessment of the enforceability or validity of the delegation clause. And a prospective waiver in the contract renders the delegation clause unenforceable in the same way that it would render the underlying arbitration contract unenforceable. If Judge Fletcher will grant me one more question. Yes, please. So I understand the argument that you're making. And it would make complete sense if the contract said, you know, we define disputes as broadly as possible to include them arising under federal, state, tribal law, whatever. And then it also said an arbitrator deciding any dispute as we've defined it must apply tribal law. That would be clear. And it would follow through your argument that you're making. But the language that's on ER 107 doesn't say that. It defines dispute broadly, as I've just paraphrased. And then it says the arbitrator has the ability to award all remedies available under tribal law. It doesn't say that it can only apply tribal law in resolving any sort of legal argument that might be made that's not a remedial legal argument. So how does that fit with the argument that you're making? There are no remedies under tribal law that would authorize an arbitrator to refuse to enforce the agreement. I'm not sure. I mean, we've looked. And again, you can find the Fourth Circuit, identify the relevant codes that exist to the extent they're relevant. We've put them in the brief. There is no law that would authorize an arbitrator to depart from either the terms of this contract or the requirement that it adhere exclusively to tribal law. And in the absence of a set of laws that would authorize it to do what your honor is suggesting, there is no way for it to work. That's by design. That's how these contracts were intended. And so I guess I disagree with the premise that this contract doesn't bind in our arbitrator's hands. I think the Fourth Circuit has found that multiple times. The only way that this court is going to reach an alternative conclusion is to is to depart from that settled consensus. And there's nothing in this contract that's going to justify doing that. Except if you if you decide ultimately that the language as it's written in the way tribal law works, the existence of the codes as inadequate as they are somehow give rise to a plausible possibility that a consumer would be able to pursue a RICO claim and recover damages. But that's never been the case. And it doesn't matter if somebody gets up today or next week and concedes that they will allow the claim to move forward. What you're the task here is to interpret this contract as written and not not to allow parties to use the contract as a as a starting point in a negotiation for something that would potentially pass muster, even if by design, it wasn't designed to. Thank you, your honor. Okay, any further questions? Okay, thank thank you very much, Mr. Sheff. Let's put three minutes on the clock for you. Thank you, your honor. First of all, ER 107 also has language which says that the arbitrators to apply tribal law, the Federal Arbitration Act and case law interpreting the Federal Arbitration Act. So it is the arbitrators charge and is much broader and it sweeps in the FAA as well as case law, which defines it. The point that Mr. Wexler made about that the sort of the review ends that tribal court is simply not correct. Judge Van Dyke is correct. It's simply an intermediate level. What the district court does when it refers the case to arbitration, what it should do is it retains jurisdiction. It stays the case. It refers the case to arbitration, and it always has back end review under Section 10 of the Federal Arbitration Act. Was the way that would work in this case, Mr. Sheff, is it would go to it would go to arbitration and then it would go to tribal court and then it would come back to the to the district court to kind of review the whole package. Yes, your honor. That's correct. Mr. Wexler also said the tribal law does not displace federal law. Let me let me follow up with that, then, because I think Mr. Wexler's strongest argument is. Even if you're sure you can, you can apply federal law and an arbitrator could apply federal law, that's all going to be killed on the back end by the tribal court. And that seems to me what is that's going to be because they're going to say none of that's none of that's consistent with tribal law. So let's assume that happens so that it goes and the arbitrator says, I'm going to go ahead and and and and not agree with Mr. Wexler's argument. Now, I think I can apply federal law, not just at the delegation, not just to the enforceability contract, but to actually the RICO claim. So I allow the RICO claim goes through and does all of that. And then at the back end, the tribal court says you're wrong and kills it all. Then when it comes back to the district court, then the district court at that point could say, well, if you know, regardless of what the arbitrator said, the there is a prospective waiver problem here because it turned out that you couldn't actually. So is that is that why is that your position? Yes, your honor, it is. That's our position to the to the extent that Mr. Wexler wants to raise the issue that, you know, the prospective waiver is going to that the application of tribal law will somehow prohibit a remedy here because of claims of immunity. None of the defense in this case are raising immunity or have ever raised immunity. That's not the issue with respect to the issue of Richards on prospective waiver, sort of distinguishing international. Could could be. Could the actual parties here raise? I mean, are they are they tribal entities or not? They're not the defendants. OK, they cannot. They've never raised immunity. They don't have a right to raise immunity. As I understand it, immunity applies to it, to the tribe itself. And immunity applies to entities that are created by the tribe for purposes of the tribe. And they are known as arms of the tribe. And to Judge Fletcher's question, we were talking about the Williams case. The reason that Williams was not controlling with respect to Gibbs is that all Williams did was it said that big picture loans was an arm of the tribe, that Ascension Technologies was an arm of the tribe of a different tribe. Therefore, we're entitled to immunity. And they talked about federal policy. That's the importance of Williams. It's not an arbitration case. Two other very quick points. The Richards case, the courts, the federal courts have never really distinguished between international and domestic in terms of prospective waiver. Mitsubishi Motors was an international case. Italian Colors was a purely domestic case. So that is not the distinguishing factor. And to the point of what Mr. Wexler is suggesting and what I mentioned in my main argument, Henry Schein and the cases which follow say you have a valid delegation clause that's clear. You have a facially valid arbitration agreement. All of these other very interesting and complex issues that we're talking about, as Judge Van Dyke said, they all go to the arbitrator. That's what the parties agree to. The arbitrator figures it out. The arbitrator makes a decision, could send it right back to the district court. The arbitrator could keep it, and then it could end up back in the district court for back-end review. It just occurred to me. So let's say the arbitrator here agrees with Mr. Wexler's arguments. And so the arbitrator decides it's not arbitrable because of unforeseen problems because of prospective waiver or any other, I think, essentially like unconscionability issues, etc. Where does it go as soon as the arbitrator does that? It's been kicked over by the federal district court at that point to the arbitrator. Does it go to the tribal court or does it go straight back to the district court? It goes to the district court. Why wouldn't it go to the tribal court? I'm sorry. It could go to the tribal court for intermediate review, but ultimately it's coming back to the district court for back-end review. For back-end review of what? It would go to the tribal court? Whatever the arbitrator's decision was and whatever the ultimate decision was of the tribal court with respect to the arbitrator's decision. The district court under Section 10 always has back-end review. But back-end review in an ordinary arbitration case is extraordinarily limited, as you well know. I do know that. There is a section, and I don't have it off the top of my head. I apologize. It may be sub 4, which is broader and permits a broader review by the district court. Okay. Thank both sides for their arguments. The two cases, Bryce v. Plain Green and Bryce v. Sequoia Capital Operations, both submitted for decision. Thank you very much. Thank you.
judges: W. Fletcher, Hunsaker, Vandyke